Bell Lumber Company, Respondent, vs. Bayfield Transfer Railway Company, Appellant.

*April 30—May 27, 1919.*

*Carriers: Carriage of goods: Liability for loss due to delay: Loss by fire: Negligence: Proximate cause.*

1. A carrier not shown to be insolvent is liable to a shipper for damages resulting from a drop in prices of forest products tendered and awaiting shipment because of delay in transportation owing to the fact that its road was being repaired, where the repairs were unnecessarily delayed owing to a lack of money, which the carrier could have procured if it had used due diligence.

2. Where the carrier knew that forest products banked on a spur track awaiting shipment were exposed to the danger of forest fires, the occurrence of which was and should have been anticipated, and that such danger was in direct proportion to the length of the delay in their transportation, and such products were destroyed by a forest fire more than a month after their tender for shipment, the unreasonable delay in repairing the road was the proximate cause of the loss.

Appeal from a judgment of the circuit court for Bayfield county: G. N. Risjord, Circuit Judge. *Affirmed.*

Action to recover damages claimed to have been sustained by plaintiff by reason of the failure of the defendant, as a common carrier, to seasonably furnish cars to transport plaintiff's forest products to market. It appears from the evidence that a portion of the forest products was banked on a spur track, called Wachsmuth spur, owned by a private corporation and used in connection with its private business, from which spur it was the custom to take out products so banked on cars furnished by defendant; and a portion was banked on defendant's own line of railway at a place called

Russell's Crossing.   Owing to the disrepair of defendant's line of road, and especially of its bridges, traffic was wholly suspended thereon from April 3 to May 12, 1914, while repairs were being made.   On May 18, 1914, the forest products located on the spur were burned by a forest fire in no way caused by the defendant.   On the same date defendant's bridge No. 8 also burned.

Two separate recoveries are asked in the complaint; one for the value of the products burned at the spur and one for the loss sustained by reason of the decline in the market price of the products located on defendant's line while they were awaiting shipment.   There is no dispute as to the amount of each element of damage if plaintiff is entitled to recover.

Defendant claims it was insolvent and that it made repairs with due diligence; and that the proximate cause of the destruction of the property by fire was not due to any act or negligence on its part.   A jury was waived and the court found as facts: (1) That the defendant railway company as a common carrier negligently failed to keep its road in sufficient repairs to be in a condition to operate so as to haul plaintiff's forest products from the Wachsmuth spur before they were destroyed by fire on May 18, 1914, and before the bridge called bridge No. 8 was destroyed on the same date; (2) that such negligence was the proximate cause of the burning of plaintiff's material on the Wachsmuth spur and the damage to plaintiff by reason of its inability to fill orders from Russell's Crossing before bridge No. 8 burned on the 18th day of May, 1914; (3) that plaintiff made a sufficient tender of shipment of the material to the railroad company both at the Wachsmuth spur and Russell's Crossing.

As a conclusion of law the court found that plaintiff is entitled to judgment against the defendant for the sum of $1,812.40 damages on its first cause of action, with interest thereon from May 18th, and for $2,948 on its second cause of action, without interest.   From a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *William F. Shea* of Ashland, attorney, and *Alfred H. Bright* of Minneapolis, Minnesota, of counsel, and oral argument by *Mr. Bright.*

For the respondent there was a brief by *Lamoreux & Cate* of Ashland, attorneys, and *Crownhart & Wylie* of Madison, of counsel, and oral argument by *C. A. Lamoreux* and *F. M. Wylie.*

VINJE, J. The findings of fact denominated as such made by the trial judge are set out in the previous statement. Introductory to such findings the judge says: "Having heretofore filed a statement in detail of my findings on the evidence, which will supplement these findings, I make these conclusions of facts." The only statement to which this can refer is the decision of the court found in the record in which facts are stated and discussed. Among such facts therein found are these:

"The defendant's superintendent knew in 1913 that the road was bad and bridges were deteriorating and was badly in need of repairs, that the defendant lacked funds for making repairs, but that no effort was made prior to the 1st of April, 1914, by the defendant to raise money with which to make repairs. It is not shown that the defendant lacked credit or was unable to obtain money for the purpose of making necessary repairs."

The evidence sustains these findings as well as those contained in the findings of fact denominated as such. That being so, the argument of the defendant that it was insolvent and hence it was not bound to perform an impossibility, namely, make repairs without funds, does not apply to the situation before us. Counsel has cited a large number of cases to sustain the proposition that a common carrier cannot be mulcted in damages for failing to perform the impossible. We need not inquire into the correctness of that proposition here because it does not fit the facts of the case. It quite conclusively appears from the evidence that Mr. Wales,

a director of defendant, stood ready to furnish funds for
repairs upon being furnished reasonably accurate data as to
their cost. The defendant did secure the funds from Mr.
Wales and did voluntarily make the repairs, but, as the court
found, it failed to make them seasonably. It is therefore
liable to plaintiff for the damages resulting from a drop in
prices of the forest products because of the unreasonable
delay in transporting them. As we understand it, counsel
for defendant does not controvert the conclusion of liability
as to this cause of action if it was the duty of defendant to
seasonably make repairs.

As to the cause of action founded upon the damages sus-
tained by plaintiff by reason of the loss by fire of its forest
products, it is earnestly argued that defendant cannot be held
liable therefor because the delay in making the repairs was
not the proximate cause of the loss. Many cases are cited
by counsel to sustain this proposition. Upon examination,
however, in so far as they are reasonably parallel they will
be found to be cases where the loss sustained was as likely to
occur where the goods would have been if seasonably trans-
ported as where they were waiting shipment, or where the
loss was the result of a contingency that could not reason-
ably be anticipated, or an act of God, so called, relieving the
defendant from liability, or where the loss occurring in
transit was as likely to happen at one time as another. The
case of *Northwestern C. M. Co. v. C., B. & Q. R. Co.* 135
Minn. 363, 160 N. W. 1028, strongly relied upon by defend-
ant, is a good example of the two latter classes. There flour
was to be transported from Minneapolis, Minnesota, to Bell-
ington, West Virginia. It reached Columbus, Ohio, on
March 19, 1913, and remained there in the railroad yards till
March 25, 1913, when it was destroyed by an unprecedented
flood. The court found unreasonable delay at Columbus,
but held, adopting the federal rule, that the act of God and
not the delay was the proximate cause of the loss. No doubt
the correct rule was applied. The flood was as likely to hap-

pen to a seasonable shipment as to a delayed one and the cause was unprecedented and one not to be reasonably anticipated.

The facts in the present case are quite different. Here the freight was lying in a place known to be subject to a greater fire risk than in transit or at destination. Logs lying in the Northern woods are in a hazardous place because of the prevalence of forest fires, and this hazard is greater in spring and fall than during any other season owing to the absence of snow and green vegetation. The hazard is so great that, as the evidence shows, no insurance can be obtained on forest products so situated. This fact was known to both parties. Plaintiff early in April called defendant's attention to the danger from forest fires which the delay would occasion and urged speed in making repairs. It was therefore a danger that was anticipated. Proximate cause as defined in our law consists of two elements: first, a reasonably close physical causal connection between the negligence and the injury claimed as a result thereof so that it can be seen that but for the negligence the injury would probably not have resulted, and second, that the negligence must be of such a character, or occur under such circumstances, that an ordinarily careful and prudent man may reasonably foresee that an injury to another may probably follow from it. *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279, 72 N. W. 735; *Wolosek v. C. & M. E. R. Co.* 158 Wis. 475, 149 N. W. 201. The latter is often called the element of anticipation, and, strictly speaking, characterizes negligence rather than causation, but is now too firmly entrenched in the definition of proximate cause to be removed therefrom. As applied to the facts in this case the law of proximate cause may be thus stated: When it is reasonably probable that an injury from an anticipated source may result to another from a failure to perform a duty owing to him, then the failure to perform such duty is the proximate cause of an injury sustained through such probable anticipated source. Here it was

known that the freight was exposed to the danger of forest fires and that such danger was in direct proportion to the length of the delay.    It was of course not certain that forest fires would occur there, but that is not essential.   It is enough that it be anticipated that they *may* occur.   *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279, 72 N. W. 735; *Feldschneider v. C., M. & St. P. R. Co.* 122 Wis. 423, 99 N. W. 1034.    That was and should have been anticipated in this case.    The court found but for the unreasonable delay of the defendant the freight would have been removed from its hazardous location and would have reached its destined market; so we have the requisite physical causation, namely, that had it not been for the unreasonable delay the loss would not have occurred.    The conclusion reached is that the court properly allowed damages upon this cause of action also.

It should be noted that a compliance with the statute upon the subject of findings of fact requires all facts to be found separately and the conclusions of law separately.   Sec. 2863, Stats. 1917.   Facts will of course have to be stated and discussed in an opinion or decision such as was included in the record here, but all such facts should be found and stated under the heading "Findings of fact," so that the parties and the appellate court may know just exactly what the facts found are and where to look for them.

. *By the Court.*—Judgment affirmed.